UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS WACH,

      Plaintiff,

    v.

BYRNE, GOLDENBERG & HAMILTON,
PLLC,

      Defendant.

Civil Action No. 11-01792 (CKK)

MEMORANDUM OPINION
(December 20, 2012)

On October 7, 2011, Plaintiff Thomas Wach ("Plaintiff"), a citizen of Switzerland,

commenced this action against the law firm Byrne, Goldenberg & Hamilton, PLLC

("Defendant"), asserting his right to a share of settlement proceeds obtained by Defendant on

behalf of third parties in connection with a separate litigation in New York. Presently before the

Court is Defendant's [10] Motion to Dismiss, which seeks dismissal of Plaintiff's Complaint

based upon the asserted failure of Plaintiff to join necessary parties as defendants in this action.

Defendant's motion has been fully briefed and is therefore ripe for adjudication. Upon careful

consideration of the parties' submissions, the relevant authorities, and the record as a whole, the

Court shall GRANT Defendant's [10] Motion to Dismiss.[1]

---

[1] Courts may consider matters outside the pleadings when ruling on a motion to dismiss for
failure to join a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7), without
converting a motion to dismiss into a motion for summary judgment. *See infra*, Part II (citing
cases). While the Court bases its decision today on the record as a whole, its consideration has
focused on the following documents: Pl.'s Compl., ECF No. [1]; Def.'s Mem. of P & A in Supp
of Mot. to Dismiss for Lack of Subject Matter Jurisdiction Resulting from Inability of Pl. to Join
Parties Required for Just Adjudication ("Def.'s Mem."), ECF No. [10]; Def.'s Mem., Ex. 1
(Decl. of John J. Byrne in Supp. of Mot. of Def. to Dismiss for Lack of Subject Matter

## I.  BACKGROUND

Plaintiff filed the Complaint in this breach of contract action against Defendant on October 7, 2011, alleging his entitlement to a share of settlement proceeds recovered in *Schoeps v. Museum of Modern Art*, a separate action litigated in federal court in New York by Defendant on behalf of heirs of the late Berlin art collector, Paul von Mendelssohn-Bartholdy ("Mendelssohn-Bartholdy"), and/or his second wife, Elsa von Mendelssohn-Bartholdy ("the *Schoeps* litigation").  *See generally* Compl.  *Schoeps* involved claims by the purported heirs of Mendelssohn-Bartholdy and/or his wife, Elsa, that certain Picasso paintings held by the Museum of Modern Art and the Solomon R. Foundation were transferred from Mendelssohn-Bartholdy and/or Elsa as a result of Nazi duress and therefore rightfully belong to the *Schoeps* plaintiffs. *See Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461 (S.D.N.Y. 2009).  As alleged by Plaintiff, the retainer agreements between Defendant and the *Schoeps* plaintiffs contain a waiver of all conflicts amongst the heirs as to their entitlement to the recovery.  Compl. ¶ 1 & n.1 (citing *Schoeps*, 594 F. Supp. 2d at 463 n.1).  *See also Schoeps*, 594 F. Supp. 2d at 463 n.1 (noting that the *Schoeps* plaintiffs "entered into a side-agreement waiving any conflicts and agreeing to divide any recovery that any one or more of them may obtain in [the] lawsuit.") (citing addendum to retainer agreement).

Plaintiff alleges that he is an "heir of Paul von Mendelssohn-Bartholdy … who was overlooked by Defendant in the course of the [*Schoeps*] litigation."  Plaintiff further alleges that since his existence has become known to Defendant (to whom the settlement funds were remitted

---

Jurisdiction Resulting from Inability to Join Parties Required for Just Adjudication) ("Byrne Decl."), ECF No. [10-1] (with exhibits); Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. [15]; Pl.'s Opp'n, Ex. 1 (Decl. of Thomas Wach in Supp. of His Opp'n to Def.'s Mot. to Dismiss) ("Wach Decl."), ECF No. [15-1]; Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply"), ECF No. [16].  In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).

as trustee), Defendant has "refused to distribute the portion of the settlement funds to which [Plaintiff] is entitled," and has "therefore breached the contract in which Defendant promised to represent all of the heirs in the recovery of works of art[.]" Compl. ¶ 2, 21. By way of relief, Plaintiff seeks a declaration from the Court that he is "a member of the settlement class as defined by Defendant – through both the retainer agreements and the side agreement waiving conflicts amongst the heirs – entitling him to share in the proceeds recovered in the [*Schoeps*] litigation." *Id*. ¶ 3. Plaintiff also asks the Court to enforce the retainer agreements and compel distribution to him of his proportionate share of the settlement funds. *Id.*

On November 23, 2011, Defendant moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) to dismiss Plaintiff's Complaint based upon Plaintiff's failure to join as co-defendants with Defendant two individuals whom Defendant contends assert rights to the same portion of the settlement proceeds claimed by Plaintiff – Mikhail von Redlich ("Redlich") of Stockholm, Sweden, and Michel Snaije ("Snaije") of Paris, France. *See generally* Def.'s Mem. Defendant's brief in support of its motion refers throughout to the accompanying declaration of John J. Byrne, a partner of Defendant law firm with knowledge of the claims allegedly asserted by Wach, Redlich, and Snaije. *See generally* Byrne Decl. Succinctly stated, Defendant argues that because Redlich and Snaije assert conflicting, mutually exclusive claims to the same funds as Plaintiff, Plaintiff should have joined both Redlich and Snaije, as is required by Federal Rule of Civil Procedure 19. *See* Def.'s Mem. at 1-3, 10-13, 18. Defendant further contends that because Plaintiff is an alien, joinder of Redlich and Snaije in this action would destroy the diversity jurisdiction upon which this proceeding is based, as the federal diversity statute, 28 U.S.C. § 1332, does not confer federal jurisdiction when aliens are aligned on opposing sides of

a lawsuit.  Def.'s Mem. at 13-16.  Accordingly, Defendant argues, Plaintiff's action must be dismissed in its entirety.   For the reasons set forth below, this Court agrees.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(7) provides that a complaint may be dismissed for "failure to join a party under Rule 19."  FED. R. CIV. P. 12(b)(7).  As a general matter, courts are reluctant to grant Rule 12(b)(7) motions, finding "dismissal [to be] warranted only when the defect is serious and cannot be cured."  *Direct Supply, Inc. v. Specialty Hosp. of Amer.,LLC*,  — F. Supp. 2d —, 2012 WL 2914361, * 6 (D.D.C. July 18, 2012) (citation omitted).  As with other Rule 12 motions, a court must accept the allegations contained within the plaintiff's complaint as true for the purposes of a Rule 12(b)(7) motion to dismiss.   *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011).  Additionally, "courts may consider both exhibits to pleadings and materials outside the pleadings in resolving a motion to dismiss under Rule 12(b)(7), without converting the motion into a Rule 56 motion for summary judgment."  *Id*. at 12 (noting also that "[t]he moving party may carry its burden by providing affidavits of persons having knowledge of the[ ] interests [of the alleged necessary party] as well as other relevant extra-pleading evidence")  (citations and internal marks omitted).  *See also Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States*, 636 F. Supp. 2d 25, 29 (D.D.C. 2009); *Direct Supply*, 2012 WL 2914361 at * 6 (citing *Anderson v. Hall*, 755 F. Supp. 2, 5 (D.D.C. 1991)).  Whether an absent party is required "can only be determined in the context of a particular litigation."  *Direct Supply*, 2012 WL 2914361 at * 6 (citing *Provident Tradesmens Bank & Trust Co.*, 390 U.S. 102, 118, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968)).

Rule 19 "establishes a two-step procedure for determining whether an action must be dismissed because of the absence of a party needed for a just adjudication."  *Cherokee Nation of*

*Okla. v. Babbitt*, 117 F.3d 1489, 1495-96 (D.C. Cir. 1997).[2]  First, the Court must apply the

factors enumerated in Rule 19(a) to determine whether the absent party is "required" to be

joined.  Rule 19(a) provides, in relevant part, that "[a] person who is subject to service of process

and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a

party if: (A) in that person's absence, the court cannot accord complete relief among existing

parties; or (B) that person claims an interest relating to the subject of the action and is so situated

that disposing of the action in the person's absence may: (i) as a practical matter impair or

impede the person's ability to protect the interest; or (ii) leave an existing party subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the

interest."  FED. R. CIV. P. 19(a)(1).  If the court finds that a "required" person has not been

joined, it "must order that the person be made a party."  FED. R. CIV. P. 19(a)(2).

     If a necessary party cannot be joined – for instance, if, as Defendant alleges here, joinder

would destroy diversity, therefore depriving the court of subject-matter jurisdiction – the court

must turn to the second step, examining the factors enumerated in Rule 19(b) to "determine

whether, in equity and good conscience, the action should proceed among the existing parties or

should be dismissed."  "The factors for the court to consider include: (1) the extent to which a

judgment rendered in the person's absence might prejudice that person or the existing parties; (2)

the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in

the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in

---

[2] Rule 19 has been amended for stylistic reasons since the *Babbitt* decision was issued.  *Compare Babbitt*, 117 F.3d at 145-146 (laying out Rule as it existed), *with* FED. R. CIV. P. 19.  Nonetheless, as the basic substance and operation of the joinder rule remains unchanged, the reasoning in *Babbitt*, as well as the other pre-amendment cases cited in this Memorandum Opinion, is instructive.  Relatedly, the Court observes at the outset that while the terms "necessary" and "indispensable" no longer appear in Rule 19, they are remnants of prior versions of the Rule which have survived in case law and are therefore used occasionally throughout this Memorandum Opinion.

the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." FED. R. CIV. P. 19(b). A court has "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1277 (D.C. Cir. 1983) (citation omitted). Questions of joinder under Rule 19 "can be complex, and determinations are case specific." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 128 S. Ct. 2180, 2188, 171 L. Ed. 2d 131 (2008).

## III. DISCUSSION

Before undertaking the two pronged analysis established under Rule 19, the Court shall pause to make a preliminary observation about the scope of the parties' dispute. First, Defendant correctly argues, and Plaintiff does not contest, that joinder of an alien as a defendant in this action would destroy the diversity jurisdiction upon which this proceeding is based, as the federal diversity statute, 28 U.S.C. § 1332, does not confer federal jurisdiction when aliens are aligned on opposing sides of a lawsuit. *See* Def.'s Mem. at 13; Pl.'s Opp'n at 12. *See* 28 U.S.C. § 1332; *see also Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 71 (D.C. Cir. 2011) ("The diversity statute does not confer subject matter jurisdiction over a lawsuit between an alien on one side, and an alien and a U.S. citizen on the other side") (citation omitted). Accordingly, the key inquiry at hand is whether Redlich and Snaije are "required" to be joined as defendants pursuant to Federal Rule of Civil Procedure 19(a), and if so, whether, applying the factors enumerated in Federal Rule of Civil Procedure 19(b), the Court may, "in equity and good conscience" permit the action to proceed without them.

Defendant argues that both Redlich and Snaije assert claims to the same share of the *Schoeps* settlement proceeds as Plaintiff and are therefore required parties within the meaning of Rule 19(a). *See* Def.'s Mem. at 2, 5-8. Specifically, Defendant explains that Plaintiff, Redlich, and Snaije all claim to be the sole inheritor to the estate of one Katharina Wach, sister and alleged heir to Mendelssohn-Bartholdy, and that all three have asserted to Defendant competing claims to the *Schoeps* settlement proceeds that derive from Katharina Wach. *See* Def.'s Mem. at 6-8 (citing Byrne Decl. ¶¶ 6-13 & exhibits thereto). Defendant contends that because Redlich and Snaije's claims are "diametrically opposed" to Plaintiff's, were the Court to join them, it would be required to align them as defendants, thereby divesting the Court of the diversity jurisdiction upon which this proceeding is based. *Id*. at 2.

Regarding Snaije, Plaintiff argues that, contrary to Defendant's assertions, Snaije does not contend to be the sole inheritor to Katharina Wach and that Plaintiff and Snaije in fact came to an agreement, whereby each party recognizes the other's claim as an heir to Katharina Wach and to a resultant fifty percent of the settlement proceeds intended for her heirs. *See* Pl.'s Opp'n at 10; Wach Decl. ¶ 4. Accordingly, Plaintiff maintains that, because Snaije's claims are aligned with Plaintiff's, if the Court were to require joinder of Snaije, it would join him as a plaintiff, keeping diversity jurisdiction intact. *Id*. at 1. On the other hand, Plaintiff does not dispute that Redlich asserts a claim to the same settlement funds as Plaintiff. *See generally* Pl.'s Opp'n. *See also id*. at 1, 12 (conceding that, unlike Snaije, whose claim is not "diametrically opposed" to Plaintiff's claim, joinder of Redlich in this action would position two aliens on opposite sides of the litigation and thus destroy diversity). Plaintiff instead argues, for several other reasons which this Court shall address herein, that Redlich is neither a required party within the meaning of Rule 19(a), nor an indispensable party under Rule 19(b). In the interest of judicial economy, the

Court need not reach the merits of the parties' contentions regarding Snaije's claims vis-à-vis Plaintiff's.  This is because, for the reasons stated below, Plaintiff's failure to join Redlich is alone enough to compel dismissal of this action.

### A.  Redlich is a required party under Rule 19(a).

Defendant argues that Redlich is a "required" party within the meaning of Rule 19(a).  By way of background, Defendant explains that in or around 2004-2005, when Defendant began working to identify those heirs of Mendelssohn-Bartholdy who were entitled under German law to recover artworks lost in Nazi Germany, Defendant concluded that Mendelssohn-Bartholdy's heirs for this purpose were denominated in Mendelssohn-Bartholdy's Contract of Inheritance ("COI"), a German testamentary instrument executed by Mendelssohn-Bartholdy and his second wife, Elsa, in 1935.  In the COI, Mendelssohn-Bartholdy gave what is the functional equivalent of a life estate under German law in all of his property to Elsa, with what is roughly the functional equivalent under German law of reversionary interests in any property remaining in Elsa's estate to Mendelssohn-Bartholdy's four surviving married sisters or their descendants: Katharina Wach, Enole von Schwerin, Charlotte Hallin, and Marie Busch.  All four sisters predeceased Elsa, leaving only their descendants and heirs as possible beneficiaries under the COI.  Def.'s Mem. at 4; Byrne Decl. ¶ 4.

Prior to instituting the *Schoeps* litigation, Defendant entered into separate retainer agreements with the heirs of each of these sisters regarding Defendant's legal services in connection with recovery of the subject artworks, including Redlich, who hails from the Hallin line but has also claimed an interest in the funds deriving from Katharina Wach.  Specifically, Redlich asserts entitlement to the Wach portion of the settlement on the basis of an alleged transfer of the Wach estate to Redlich by Katharina Wach's daughter, Susanne Heigl-Wach.

Def.'s Mem. at 5; Byrne Decl. ¶ 5; Byrne Decl., Ex. F (Complaint in German action, with certified English translation), at 4.

After the *Schoeps* settlement was reached, Defendant received correspondence from Plaintiff, whereby Plaintiff claimed an interest in a share of the settlement proceeds, based upon inheritance rights stemming from the late Hugo Wach (a son of Katharina Wach and sister to Susanne Heigl-Wach) and petitioned Defendant to "freeze" the relevant settlement funds in a trust account pending resolution of his claim. *See* Def.'s Mem. at 6; Byrne Decl. ¶ 7 & Ex. B (Letter from Plaintiff to Defendant dated November 17, 2010); Byrne Decl. ¶ 8 & Ex. C (Letter from Plaintiff's counsel to Defendant dated June 7, 2011). *See also* Wach Decl. ¶¶ 2-3.  As Defendant contends, Plaintiff's claim directly conflicts with Redlich's asserted interest in the Wach share of the settlement funds.  In short, Redlich's position is that pursuant to the terms of the COI, under the particular circumstances upon which Plaintiff bases his claim, only lineal descendants of Mendelssohn-Bartholdy would inherit property from his estate whenever Elsa died, and not merely heirs of lineal descendants as is Plaintiff. *See* Def.'s Reply at 4; Byrne Decl. ¶ 4.  More specifically, Redlich asserts that because Hugo Wach died before the reversionary interest in the Mendelssohn-Bartholdy estate vested (which occurred when Mendelssohn's second wife, Elsa, passed away), neither Hugo Wach nor his heirs inherited any reversionary rights.  Def.'s Reply at 4; Byrne Decl. ¶ 4; Byrne Decl., Ex. F (Complaint in German action, with certified English translation), at 4.  Rather, only Hugo Wach's sister, Susanne Heigl-Wach, who was still alive at the time of Elsa's death, became the subsequent heir of the entire Wach share, which she later transferred in whole to Redlich. Byrne Decl., Ex. F (Complaint in German action, with certified English translation), at 4.

Sometime after receiving Plaintiff's correspondence, Defendant arranged to meet with Plaintiff's counsel to discuss how the competing claims might be resolved. Def.'s Mem. at 6; Byrne Decl. ¶¶ 8-9. Ultimately, the parties failed to come to an agreement. *See* Byrne Decl. ¶¶ 9-11. Thereafter, Redlich, through his German attorney, filed a declaratory action in a district court in Berlin, Germany seeking a declaration that Hugo Wach never became a subsequent heir of Mendelssohn-Bartholdy. *See* Byrne Decl., Ex. F (Complaint in German action, with certified English translation), at 3-4. Notably, in the complaint filed in the Berlin action, Redlich specifically references Plaintiff's "invalid" claim to the Wach portion of the *Schoeps* settlement proceeds (and Plaintiff's "blocking" of the payout of the respective funds) as the reason Redlich "had to file" the complaint. *See* Byrne Decl., Ex. F (Complaint in German action, with certified English translation), at 3-4.[3] *See also* Joint Status Report, ECF No. [20] (Plaintiff and Defendant jointly describe the relief sought by Redlich in the German action as "a declaration from the court that [Plaintiff] is not a reversionary heir of [Mendelssohn-Bartholdy] and therefore not entitled to any settlement proceeds arising out of litigation for the restitution of artwork previously owned by [Mendelssohn-Bartholdy]"). Plaintiff subsequently commenced the instant action against Defendant in this Court on October 7, 2011. *See* Compl.

---

[3] As indicated in the parties' status reports recently filed with the Court, on November 15, 2012, the Berlin court issued a decision on the merits in favor of Plaintiff, finding that Hugo Wach became a substitute reversionary heir for the reversionary share of his mother, Katharina Wach, in the estate of Mendelssohn-Bartholdy, and that Plaintiff, as the heir of Hugo Wach, is therefore a reversionary heir of Mendelssohn-Bartholdy. *See* Pl.'s Status Report, ECF No. [21]; Def.'s Status Report, ECF No. [22]. The parties' status reports further indicated that Redlich has stated that he intends to file an appeal of the regional court decision, unless a settlement of the case is reached. Pl.'s Status Report, ECF No. [21]; Def.'s Status Report, ECF No. [22]. The Court need not, and should not, consider the implications of the Berlin court's ruling, as this goes only to the merits of the parties' competing claims to the settlement funds, which, for the reasons stated *infra*, the Court declines to address in resolving Defendant's instant motion.

Against this background,[4] the Court easily finds Redlich to be a "required" party within

the meaning of Rule 19(a)(1)(B).[5]   First, because Plaintiff and Redlich lay opposing,

irreconcilable claims to the same portion of the limited settlement proceeds, resolving this

litigation in Redlich's absence would undoubtedly "impede [Redlich's] ability to protect" his

interest in those funds.  *See* FED. R. CIV. P. 19(a)(1)(B)(i).  Indeed, courts in this Circuit typically

require joinder of an absent party where the claims of a party and the absent party to a common

fund or asset are conflicting and mutually exclusive.  *See, e.g.*, *Wichita and Affiliated Tribes of*

---

[4] While the factual background set forth in this Memorandum Opinion is drawn not only from
Plaintiff's Complaint, but also Defendant's Memorandum, and the accompanying Byrne
Declaration and exhibits thereto, Plaintiff does not contest the history that is relayed here in any
material respect.  *See* Pl.'s Opp'n at 1 ("[Plaintiff] incorporates the well pleaded facts in his
Complaint.  While [Plaintiff] takes issue with several facts alleged by Defendant, these are
addressed herein.").  *Cf. Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp.
2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an
opposition to a dispositive motion and addresses only certain arguments raised by the defendant,
a court may treat those arguments that the plaintiff failed to address as conceded.") (citing *FDIC
v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997); *Stephenson v. Cox.*, 233 F. Supp. 2d 119, 121
(D.D.C. 2002)), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004).
[5] Defendant also argues, albeit conclusorily, that joinder of Redlich is required pursuant to Rule
19(a)(1)(A), which requires joinder of a person if "in that person's absence, the court cannot
accord complete relief among existing parties."  *See* Def.'s Mem. at 11.  Specifically, Defendant
asserts that the Court here cannot offer complete relief to either party in Redlich's absence
because no matter who prevails in this suit, Redlich could still maintain a subsequent action
against either Plaintiff or Defendant to recover the settlement proceeds.  *Id.*  Plaintiff counters
that because Defendant still maintains control over the funds at issue, the Court can ensure full
relief to Plaintiff through an order requiring Defendant to disburse to Plaintiff the portion of the
funds to which he is entitled.  *See* Pl.'s Opp'n at 4. Plaintiff further argues that the mere
possibility that a successful party to the original litigation might have to defend its rights in a
subsequent suit by the absent person does not make the absent person a necessary party to the
original litigation.  *Id.* (citing *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701 (3d Cir.
1996).  In the interest of judicial economy, and in light of its unequivocal finding that Redlich is
a necessary party pursuant Rule 19's alternative prong, Rule 19(a)(1)(B), the Court declines to
address the merits of these arguments and therefore does not rely on Rule 19(a)(1)(A) in
reaching its decision today.  *See* FED. R. CIV. P. 19(a)(1) (requiring joinder of an absent party if
(A) in that person's absence, the court cannot accord complete relief among the parties, *or* (B)
that person claims an interest relating to the subject of the action … " (emphasis added). *See also
Angst*, 77 F.3d at 705 ("Notwithstanding a determination of complete relief, a party may still be
necessary under subsection [(a)(1)(B)]").

*Oklahoma v. Hodel*, 788 F.2d 744 (D.C. Cir. 1986); *Fortuin v. Mihorat*, 683 F. Supp. 1 (D.C. Cir. 1988). *See also Brown v. Christman*, 126 F.2d 635 (D.C. Cir. 1942) ("Generally, where the action involves a determination of conflicting interests of beneficiaries in a trust fund, the beneficiaries are held to be necessary parties."). Here, as aforementioned, Plaintiff does not dispute the fact that he and Redlich claim entitlement to the same portion of settlement proceeds. Nor could he, in view of the legal proceedings brought against him by Redlich in Germany. Rather, Plaintiff posits that Redlich "has no claimed interest at issue since he claims to be an heir of the Wach line based on German law and [the COI]," while Plaintiff's claim to the settlement funds is based upon Plaintiff's status as the sole court adjudged "heir" to Katharina Wach[6] and Defendant's retainer agreements, which, as Plaintiff alleges, do not reference the COI but rather, define "heirs" broadly as "'the heirs of Paul and Elsa von Mendelssohn-Bartholdy[.]'" Pl.'s Opp'n at 2-3. Stated differently, Plaintiff argues that because Defendant has not put forth any evidence to show that Redlich has an interest in the Wach settlement proceeds under the retainer agreements (as opposed to pursuant to the COI), Redlich has no "legally protectable interest" in the instant suit and accordingly will not be prejudiced by resolution of the suit in his absence. *Id.* at 5-8.

Plaintiff's argument misses the mark. Preliminarily, the Court notes that the definition of "heir" for purposes of the *Schoeps* litigation and settlement is a matter of obvious and material dispute between the parties. Plaintiff grounds his interpretation on the language contained within an unexecuted copy of a retainer agreement between Defendant and third-party Peter Schüring (the "Schüring Agreement"), which Plaintiff alleges is representative of multiple retainer

---

[6] Plaintiff alleges that he has established that he is such an heir by way of an "Erbeshine," a document issued by a German court attesting that he is an heir of Katharina Wach. Compl. ¶ 24 & Ex. 4. *See also* Pl.'s Opp'n at 5-6, n.4.

agreements reflecting his right of recovery. *See* Compl. ¶ 13; *id*., Ex. 1.  Defendant counters that

the language of the draft Schüring Agreement upon which Plaintiff relies differs materially from

the corresponding language of the retainer agreement applicable to the Wach funds (the "Wach

Agreement"), which necessarily prescribes any right that Plaintiff may have to a portion of the

settlement proceeds and which makes the COI dispositive  –  in fact the "lodestar" – for

ascertaining which of the heirs of Mendelssohn-Bartholdy are entitled to recover artworks lost in

Nazi Germany.[7]  *See* Def.'s Mem. at 4; Byrne Decl. ¶¶ 4, 12; Def.'s Reply at 2, 6.

     In view of the parties' respective positions, the Court finds that Plaintiff's contention

that Redlich possesses no "legally protectable interest" in the settlement proceeds at issue in this

action inappropriately presupposes Plaintiff's success on the merits.  If the Court pursued

Plaintiff's line of reasoning, it would be required to determine the proper definition of "heir" for

purposes of the *Schoeps* litigation and settlement – an issue central to Plaintiff's claims in this

action – before ruling on Defendant's motion to dismiss.  Such an approach is simply untenable,

as it would effectively render the Rule 19 analysis an adjudication on the merits.  *See Davis v.*

*U.S.*, 192 F.3d 951 (10th Cir. 1999) ("Rule 19, by its plain language, does not require the absent

---

[7] Defendant, invoking various privileges, has refused to provide Plaintiff with a copy of the Wach Agreement or to file it on the public docket.  *See* Order (Aug. 17, 2012), ECF No. [19]. While Defendant has offered on more than one occasion to provide the Wach Agreement to the Court *ex parte*, the Court declines this invitation and refers Defendant to its August 17, 2012 Order, which states, in relevant part: "The Court declines [Defendant's] invitation to review that separate agreement *ex parte* and compare it to the Schüring [A]greement to resolve the scope of the rights [Plaintiff] seeks to vindicate in this action. Not only would such a merits-based inquiry be premature, but considering the separate agreement *ex parte* would unfairly prevent [Plaintiff] from rendering a meaningful response and, just as importantly, would deprive this Court of the benefits of an adversarial presentation. *See CropLife Am. v. EPA*, No. 02-1057, 2002 WL 1461788, at *1 (D.C. Cir. July 8, 2002) ("*Ex parte* proceedings are generally disfavored by the court.")." Order (Aug. 17, 2012), at 3 n.3.  Furthermore, consideration by the Court of the terms of either the Wach Agreement or the Schüring Agreement would constitute a probe into the merits of this proceeding, which, for the reasons set forth *infra*, the Court finds improper in the context of Defendant's instant motion.

party to actually *possess* an interest; it only requires the movant to show that the absent party '*claims an interest* relating to the subject of the action.'") (emphasis in original).  Furthermore, as several federal courts have held, the term "legally protected interest" must be construed to exclude only those claimed interests that are "patently frivolous."  *Id*. at 959 (citing *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992), *cert. denied*, 509 U.S. 903, 113 S.Ct 2993, 125 L.Ed.2d 688 (1993)).  Here, considering Defendant's allegations regarding the relevancy of the COI, as well as the apparent attention paid by all involved parties and their counsel to the competing claims springing from the *Schoeps* settlement, Redlich's asserted interest in the settlement proceeds deriving from Katharina Wach can certainly not be said to be frivolous.  Accordingly, the Court concludes that joinder of Redlich in this action is necessary because "disposition of the action in [Redlich's] absence may … as a practical matter impair or impede [his] ability to protect [his] interest." FED. R. CIV. P. 19(a)(1)(B)(i).

The Court also finds joinder of Redlich necessary because proceeding without him would leave Defendant "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" regarding the disputed settlement proceeds, as there is nothing to prevent Redlich from later suing Defendant to recover the disputed funds, regardless of who prevails in the instant action.  *See* FED. R. CIV. P. 19(a)(1)(B)(ii).  While Plaintiff argues that the doctrine of issue preclusion would prevent Redlich from relitigating whether Plaintiff is an heir under the retainer agreements, *see* Pl.'s Opp'n at 8-9, Plaintiff's logic in this regard is simply mistaken.  In this Circuit, the standard for issue preclusion requires that "(1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Wash. Med. Ctr. v. Holle*,

14

573 A.2d 1269, 1283 (D.C. Cir. 1990).  "A privy is one so identified in interest with a party to

the former litigation that he or she or it represents precisely the same legal right in respect to the

subject matter of the case – in other words, a person who or entity that is in privity with the

party."  *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 261 (D.D.C. 2011) (citation and internal marks

omitted).

Here, Plaintiff argues that Defendant and Redlich are in "privity" for the following

reasons: Defendant continues to represent Redlich in connection with the recovery of other

artwork previously owned by Mendelssohn-Bartholdy; Defendant asserts the same theory as

Redlich that the COI governs the definition of "heirs"; and because "[t]here would appear to be

no one better to ensure [Redlich's] interests are protected in this proceeding other than his

counsel."  Pl.'s Opp'n at 9, 13.  However, as Defendant correctly observes, Plaintiff has failed to

demonstrate that Defendant and Redlich share a "precisely" identical interest in the subject

matter of the litigation – namely, the allocation of the Wach share of the settlement proceeds to

Redlich.  Def.'s Reply at 8.  To the contrary, Defendant's only interest in the Wach proceeds is,

as trustee, to ensure that the proceeds are paid to the legally appropriate person.  *Id*.  Further,

Defendant explains that in this discrete context, Defendant even possesses a conflict of interest

with Redlich.  *See id*. at 8 & n.4 (stating that "[t]he best interests of [Defendant] would be served

by resolving this controversy expeditiously, even if this goal required Redlich to surrender or

compromise his legal interest in the proceeds").  *Id*.[8]  For all of the foregoing reasons, the Court

---

[8] For this reason, Defendant asserts, Redlich has retained independent legal counsel to represent
his interests in this litigation.  Def.'s Reply at 8.  Relatedly, Defendant notes that the relevant
retainer agreement between Defendant and Redlich limits the scope of Defendant's
representation exclusively to claims to recover artwork that Mendelssohn-Bartholdy lost in Nazi
Germany.  As such, even if Defendant purported to represent the interests of Redlich regarding
his claims vis-à-vis Plaintiff to the settlement proceeds at issue in the instant controversy,

finds that Defendant and Redlich are not in privity and that therefore, were Plaintiff to prevail against Defendant in the instant suit, Redlich would not be estopped from bringing a subsequent proceeding against Defendant to recover the same portion of the settlement funds at issue here. Accordingly, joinder of Redlich is necessary to safeguard Defendant from multiple and inconsistent liabilities pursuant to Rule 19(a)(1)(B)(ii).

**B.   This action shall be dismissed pursuant to the factors enumerated in Rule 19(b).**

Having established that Reidlich is a necessary party within the meaning of Rule 19(a), and that joinder of Reidlich would divest this action of subject matter jurisdiction, and is therefore not feasible, the Court shall now turn to the second step of its analysis – "determin[ing] whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b).  Defendant argues that because Reidlich cannot be joined, the Court should dismiss Plaintiff's Complaint based on the Rule 19(b) factors.  *See* Def.'s Mem. at 17-19.  For the reasons set forth below, this Court agrees that it cannot "in equity and good conscience" permit Plaintiff to proceed in this action against Defendant without Reidlich.  FED. R. CIV. P. 19(b).

To begin with, a judgment rendered in favor of Plaintiff in Redlich's absence would certainly "prejudice" both Redlich and Defendant for the same reasons this Court finds Redlich to be a required party in the first place.  *See* FED. R. CIV. P. 19(b)(1) (factors for the court to consider in determining whether the action should proceed include "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"). *See also Capitol Medical Ctr., LLC v. Amerigroup Maryland, Inc.*, 677 F. Supp. 2d 188 (D.D.C. 2010) ("Evaluation of the first Rule 19(b) factor overlaps considerably with the Rule 19(a)

Defendant could not do so because Defendant has no such authority from Redlich. Def.'s Reply at 2, 8 n.25.

analysis.") (citations and internal marks omitted); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002) ("The prejudice to the [absent party] stems from the same impairment of legal interests that makes the [party] a necessary party under Rule 19(a)…") (citation omitted).   Proceeding with this action in Redlich's absence is likely to prejudice Redlich because, for reasons already discussed, Plaintiff's claim is directly antagonistic to Redlich's interest in the limited pool of settlement funds and Redlich cannot protect his interests in the subject matter of this litigation without being joined.  *See Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 765 ("Conflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence… 'Where the purpose of the suit is the disposition of a fund, a trust, or an estate to which there are several claimants, all of the claimants are generally indispensable.'") (citation omitted).    Furthermore, and also for reasons already discussed, a judgment rendered in favor of Plaintiff and in Redlich's absence would likewise prejudice Defendant, in that Redlich's absence would expose Defendant to the risk – if not the certainty – of a subsequent claim by Redlich to the same funds at issue here and thus to the possibility of multiple inconsistent liabilities.

Finally, as Defendant rightly contends, Plaintiff has alternative judicial remedies available to resolve this controversy, both in Germany and in the Superior Court of the District of Columbia, where all persons who assert an interest in the Wach settlement funds can adjudicate their claims.  *See* FED. R. CIV. P. 19(b)(3)-(4) (factors to consider include "whether a judgment rendered in the person's absence would be adequate" and "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder").   Indeed, the record reveals that Plaintiff has previously acknowledged the adequacy of the latter forum.  *See* Byrne

Decl., Ex. D (Letter from Plaintiff's counsel to Defendant dated July 5, 2011), at 2-3 ("The unanswered questions raised in our meeting were how to proceed and in what forum. … We believe there are two choices of how to proceed.  We can file a declaratory action in the District of Columbia Superior Court, or by consent, have the matter arbitrated on a fast track through the American Arbitration Association in the District of Columbia.").

Given the above considerations, the Court concludes that it cannot, "in equity and good conscience," permit the instant action to proceed without Redlich.   FED. R. CIV. P. 19(b). Because joinder of Redlich would necessarily divest this action of the diversity jurisdiction on which it is based, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(7) for failure to join a party under Rule 19.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendant's [10] Motion to Dismiss. An appropriate Order accompanies this Memorandum Opinion.


Date:   December 20, 2012


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

18